UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 17-018-DCR |
| ) | and |
| V. ) | Civil Action No. 5: 19-405-DCR |
| ) | |
| EDGAR VILLA-CASTANEDA, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

*** *** *** ***

Defendant Edgar Villa-Castaneda ("Villa") was convicted of threatening to murder a federal official and soliciting to commit murder. He was sentenced to a total term of 360 months' imprisonment. Villa's convictions and sentence were affirmed on appeal. [Record Nos. 85, 93] Villa has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that his trial attorney, Benjamin Allen, provided ineffective assistance. [Record Nos. 97]

Consistent with local practice, Villa's § 2255 motion was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B). United States Magistrate Judge Hanly A. Ingram reviewed the motion and issued a Recommended Disposition, indicating that Villa's motion to vacate should be denied. [Record

No. 109] Villa filed timely objections to the Recommended Disposition.[1] [Record No. 21] Following careful review of this matter, the Court will deny the relief sought.[2]

**I.**

Villa, his son Julio Cesar Villa Arana, and others, were charged with various drug trafficking, firearms, and money laundering offenses in 2015. [Lexington Criminal No. 5: 15-013-KKC] While being held at the Woodford County Detention Center awaiting trial, Villa began telling people that he wanted to kill Robert Duncan, Jr., one of the Assistant United States Attorneys ("AUSA") responsible for his and his son's prosecution. [Lexington Criminal No. 5: 17-018-DCR, Record No. 90, pp. 87, 169] Villa asked a cellmate, Talbert Marshall, to help him find someone to kill Duncan and advised Marshall that he would pay the person $25,000.00. Villa explained that he would pay $15,000.00 up front and the remaining $10,000.00 after the job was completed. He stated that he had the money stashed in some speakers at his sister's house and in the headliner of a truck. Villa gave Marshal his sister's phone number, which Marshal was to provide to the person he found to kill Duncan. The would-be killer was to call Villa's sister and arrange for her to leave the payment in his or her car, which would be parked in a Kroger parking lot in Winchester, Kentucky.

---

[1] Magistrate Judge Ingram entered a briefing schedule directing the United States to respond to the § 2255 motion and permitting the defendant to tender a reply. Villa now reports that he did not tender a reply before the deadline set by Magistrate Judge Ingram because he had not received a copy of the government's response. Accordingly, Villa was permitted to include his reply as part of his objections to the Recommended Disposition.

[2] Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Villa also discussed his plan with another cellmate, Gill Garrett, in August and September 2015. *Id.* at 170. Villa suggested that Garrett's girlfriend shoot Duncan; Villa offered to pay her $10,000.00, which could be used to support her drug habit. When Garrett declined this offer, Villa told him that he wanted to remember Duncan's face so he could shoot him himself when released from prison. *Id.* at p. 171. Villa also discussed killing Duncan by throwing a container of acid at him, telling Garrett that he had learned this technique in the military.

On or around September 25, 2015, Marshal wrote a letter to his attorney advising him of Villa's plan. FBI agents subsequently interviewed Marshal, whose story was corroborated by at least one other inmate at the Woodford County Detention Center. *Id.* at p. 123. The agents attempted to monitor conversations between Marshal and Villa (with Marshal's consent), but the men's voices were obscured by outside noise.

FBI Special Agent John Whitehead then interviewed Villa on November 6, 2015. *Id.* at p. 127. Villa admitted having conversations with a few different inmates during which he complained about Duncan and offered to pay money to have him killed. He told Whitehead about the money he had hidden in speakers at his sister's house and the plan to leave the money in a parking lot in Winchester, Kentucky. *Id.* at p. 134. Ultimately, however, Villa advised Whitehead that he had only been joking about wanting to kill Duncan. *Id.* at p. 139.

In June 2016, Villa pleaded guilty to conspiring to distribute 1,000 kilograms or more of marijuana and conspiring to commit money laundering in Lexington Criminal Action No. 5: 15-013-KKC. He was sentenced to 204 months' imprisonment, to be followed by five years of supervised release. [Lexington Criminal Action No. 5: 15-013-KKC, Record No. 817] In February 2017, a federal grand jury sitting in Lexington, Kentucky indicted Villa in the instant

matter, charging him with threatening to murder then-AUSA Duncan, with the intent to retaliate against him on account of the performance of his official duties and soliciting Talbert Marshall to murder Duncan, an official of the United States.[3]

A jury convicted Villa of both counts following a two-day jury trial in October 2017. Villa was sentenced to 360 months' imprisonment, to run consecutive to the term of imprisonment imposed in Lexington Criminal Action No. 5: 15-013-KKC.  He also was sentenced to three years of supervised release, to run concurrently to the term of supervised release imposed in Lexington Criminal Action No. 5: 15-013-KKC.

Villa filed a direct appeal challenging this Court's denial of his motion to suppress his statements to law enforcement officers and its imposition of consecutive sentences.  The United States Court of Appeals affirmed Villa's convictions and sentence.  *United States v. Villa-Castaneda*, 755 F. App'x 511 (6th Cir. 2018).  This timely motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 followed.

## II.

Villa filed the instant motion on October 1, 2019, alleging that his trial attorney, Benjamin Allen, was ineffective for a host of reasons.  [Record No. 97] To prevail under § 2255, the movant must allege an error of constitutional magnitude, a sentence imposed outside the statutory limits, or an error that was so fundamental it rendered the entire proceeding invalid.  *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003).  To obtain § 2255 relief on the grounds of ineffective assistance of counsel, Villa must establish that Allen's

---

[3]    Duncan was nominated by President Donald J. Trump on August 3, 2017, to become the United States Attorney for the Eastern District of Kentucky.  He subsequently was confirmed by the United States Senate and sworn into office on November 21, 2017.

performance was deficient compared to an objective standard of reasonable performance and that there is a reasonable likelihood that he was prejudiced because of Allen's errors. *Id.* at 497 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). In making a § 2255 motion, the movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003).

### III.

Villa's memorandum in support of his § 2255 motion includes seven numbered paragraphs that involve a few recurring themes. First, and most prevalent, is Villa's wholly unsubstantiated theory that Allen and others were biased against him based on Duncan's appointment as U.S. Attorney for the Eastern District of Kentucky. Villa also argues that Allen was ineffective for failing to argue that the government entrapped him by attempting to record his conversations with other inmates. Finally, Villa contends that Allen was ineffective for failing to argue that the government committed a *Brady* violation by failing to disclose SA Whitehead's notes from his interview with Villa.

The Magistrate Judge's Recommended Disposition discusses each of Villa's arguments in detail. Villa purports to object to the Magistrate Judge's conclusions with respect to grounds five, seven, and eight. However, he devotes a significant portion of his 32-page memorandum to new arguments, which mostly contend that the evidence adduced at trial is insufficient to support his convictions.[4]

---

[4] Villa also argues, for the first time, that the prosecutor committed misconduct during closing statements by mentioning his connection with a drug conspiracy and that Allen provided ineffective assistance by failing to argue that Villa had renounced solicitation to commit murder under 18 U.S.C. § 373(b). Not only did Villa waive these arguments by failing to raise them in his § 2255 motion, he has failed to identify any evidence suggesting that they would succeed on the merits. The prosecutor's comments during closing statements were based on Duncan's

"[W]hile the Magistrate Judge Act, 18 U.S.C. § 631 *et seq.*, permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 903 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)). Accordingly, arguments raised for the first time in an objection to a magistrate judge's recommended disposition are waived absent compelling reasons. Villa has not identified compelling reasons (or any reasons) for failing to present any of his newly-raised arguments to the Magistrate Judge, including his challenges to the sufficiency of the evidence.

Villa appears to object to the Magistrate Judge's conclusions regarding counsel's failure to pursue a defense based on entrapment. [Record No. 111, p. 13] He contends that entrapment was a valid defense to his charges because Talbert Marshal attempted to call Villa's sister and, therefore, was not a "mere listener" when it came to assisting the FBI. However, as the Magistrate Judge explained, entrapment has two elements: (1) government inducement of the crime; and (2) the defendant's lack of predisposition to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 62-63 (1988); *United States v. Khalil*, 279 F.3d 358 (6th Cir. 2002). Villa has not identified any evidence to meet either of these requirements. His suggestion that FBI agents asked Marshal to call Villa's sister *after* Villa solicited Duncan's murder does not indicate that the government induced the crime or that Villa was

---

testimony that he took Villa's threats seriously because of his affiliation with a violent drug organization. [Record No. 90, p. 114] And Villa has not identified any evidence that would have supported a defense that he voluntarily and completely renounced the plan to have Duncan killed under 18 U.S.C. § 373(b).

not predisposed to engage in the conduct. Further, Villa presents this argument for the first time, without explanation, and it could be denied on that basis alone.

To the extent Villa claims that counsel should have "moved for" a "true threat theory of defense," that *was* a defense theory that attorney Allen pursued at trial. Allen attempted to impeach the credibility of the inmates who testified regarding Villa's plan to harm Duncan, as well as SA Whitehead, who failed to record the interview in which Villa admitted that he had threatened to have Duncan killed. Villa suggests that the jury instructions were inadequate, but Instruction No. 11 ("Threatening a Public Official") required the jury to find that the threat at issue was a "true threat" and defined that term. [Record No. 70, pp. 14-15] And while the defendant's impeachment evidence ultimately did not persuade the jury, Villa has not indicated what more Allen could or should have done to promote this theory of defense.

Finally, Villa objects to the Magistrate Judge's findings with respect to his allegation that the United States violated its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over SA Whitehead's interview notes. However, SA Whitehead testified that he did not retain such interview notes and that his summary of the notes, also known as an FD-302 form, was the only documentation for the interview. Contrary to Villa's assertion, there is nothing to suggest that Whitehead's notes included any exculpatory evidence or differed from the FD-302 in any other way.

The Magistrate Judge concluded that Villa's *Brady* claim was procedurally defaulted because he did not raise it on appeal, and Villa has not explained why that ruling is incorrect. *See Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (explaining that habeas proceedings cannot be used to circumvent the appeals process). Regardless, any *Brady* claim also fails on the merits because Villa has not provided any facts suggesting that the government

suppressed evidence that was favorable to him because it was exculpatory or impeaching, and that he was prejudiced by the nondisclosure. *See Stickler v. Greene*, 119 S. Ct. 1936, 1948 (1999).

### IV.

When the Court denies a motion under § 2255, it must decide whether to grant a certificate of appealability, which would allow the defendant to appeal the adverse decision. *See* Rule 11 of the Rules Governing § 2255 Proceedings; 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different way or that the issues involved were adequate to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Villa has not satisfied this standard. He has set forth a number of grievances with his attorney but has not stated any credible allegations or identified any facts that arguably meet the standard for ineffective assistance of counsel under *Strickland*, 466 U.S. 668. The majority of Villa's claims involve wholly unsubstantiated allegations concerning a conflict of interest between Allen and then-AUSA Duncan concerning Duncan's nomination as U.S. Attorney. And while Villa claims that Allen should have made arguments concerning entrapment and a *Brady* violation, attorneys are not ineffective for failing to make frivolous arguments. Accordingly, a certificate of appealability shall not issue.

Based on the foregoing, it is hereby

**ORDERED** as follows:

- 9 -

    1.    The Magistrate Judge's Recommended Disposition [Record No. 109] is **ADOPTED AND INCORPORATED**, in full.  The defendant/movant's objections [Record No. 111] are **OVERRULED**.

    2.    The defendant/movant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is **DENIED** and this collateral proceeding shall be **DISMISSED**, with prejudice.

Dated:  July 30, 2020.

*Danny C. Reeves, Chief Judge*
*United States District Court*
*Eastern District of Kentucky*